**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **COLLIN REYNOLDS** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION NO.:** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **CARVANA , LLC** | ) | |
| | ) | **JURY DEMAND** |
| **Defendant.** | ) | |

**COMPLAINT**

## I. INTRODUCTION

1. This is an action alleging disability discrimination and retaliation in violation of Title I of the Americans with Disabilities Act, as amended ("ADA"), 42 U.S.C. §12101 et seq., brought by Plaintiff Collin Reynolds ("Plaintiff"). Plaintiff is a qualified individual with a disability. Plaintiff alleges that Defendant Carvana, LLC ("Defendant"), discriminated and retaliated against him based on his disability, his record of disability, and Defendant's perception of Plaintiff as disabled, in violation of the ADA. In this action, Plaintiff also alleges violations of the Family Medical Leave Act ("FMLA"), 29 U.S.C. 2601 et. seq. Plaintiff was an eligible employee with a serious health condition; Plaintiff also had a parent with a serious health condition. Defendant interfered with Plaintiff's rights under the FMLA and retaliated

against Plaintiff for taking leave under the FMLA. Plaintiff seeks injunctive relief, equitable relief, reinstatement, lost wages and benefits, compensatory damages, liquidated damages, and reasonable attorney fees and costs.

## II. JURISDICTION

2. This Court has jurisdiction in accordance with 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391.

3. Plaintiff has fulfilled all conditions precedent to the institution of this action under Title I of the ADA. Plaintiff timely filed his charge of discrimination within 180 days of the occurrence of the last discriminatory act and the Equal Employment Opportunity Commission investigated. On July 31, 2025, the EEOC issued a Letter of Determination and Notice of Rights. Plaintiff timely filed this lawsuit. The FMLA does not require the exhaustion of administrative remedies. Plaintiff's FMLA claims are timely. 29 C.F.R. 825.400(b).

## III. PARTIES

4. Plaintiff, Collin Reynolds, is an individual over the age of 19 years and is a resident of Emerson, Columbia County, Arkansas. Plaintiff is an individual with a disability, has a history of a disability, and is regarded by Defendant as disabled. Despite this disability, with or without reasonable accommodation, Plaintiff could perform the essential functions of his position. Consequently, Plaintiff is a qualified individual, as defined under the ADA. Plaintiff also had a serious health condition

under the FMLA and, for all times relevant, was an employee eligible for benefits under that statute.

5. Defendant Carvana, LLC (referred to herein as “Defendant” or “Carvana”) is an "employer" as defined under both the ADA and the FMLA and is subject to compliance with both statutes. 42 U.S.C. 12111(5); 29 U.S.C. 2611(4)(A). Defendant has an office in Nashville, Davidson County, Tennessee.

## IV. FACTUAL ALLEGATIONS

6. Plaintiff re-alleges and incorporates by reference the foregoing paragraphs above with the same force and effect as if fully set out in specific detail herein below.

7. Plaintiff Collin Reynolds began working at Defendant’s location off Old Hickory in Nashville, Tennessee, in September 2022, while employed by a temporary services agency.

8. In February of 2023, Reynolds was hired on as a direct employee of Carvana at the Old Hickory location, in the position of Lot Attendant.

9. As a Lot Attendant, Reynolds organized cars on the lot, cleaned cars, and helped coordinate pick ups and drop offs for Carvana’s back haul drivers.

10. Reynolds performed his job well.

11. Reynolds is a person with a disability, as that term is defined under the Americans with Disabilities Act.

12. In 2004, Reynolds was diagnosed with Chron's disease. Plaintiff's health condition adversely impacts the normal functioning of his digestive tract. Although Reynolds is under the care of doctors and follows his medication regimen, he still experiences flare-ups of his disability which can cause symptoms such as extreme nausea, pain, and vomiting.

13. At the time he was hired as a full-time employee with Carvana, Reynolds' Manager was Gerard Aurora and his Team Lead was Kirk Simpson.

14. Because Reynolds knew that he would need to go to doctors' appointments, sometimes frequently, as a result of his disability, he verbally requested the reasonable accommodation of having Monday and Tuesday as his 'off' days.

15. Defendant's Old Hickory location was open seven days per week, and Reynolds was able to do his job on any day of the week.

16. Reynolds explained his Chron's disease symptoms and treatment and why he needed to have the Wednesday through Sunday schedule. Manager Aurora said ok. Manager Aurora did not tell Reynolds that he needed to fill out any special paperwork for this request and Reynolds' schedule accommodation was followed.

17. Sometimes, when Reynolds experiences a flare-up of his disability, his adverse symptoms would be so bad that he would need to leave work early or come in late or miss a day altogether.

18. With Manager Aurora and Team Lead Simpson, Reynolds worked out an informal accommodation whereby Reynolds would let a supervisor know (verbally and/or through text) about his need to leave early or come in late or miss a day because of his disability. Then Reynolds would make up his time later, either that same day or on a different day during that same week. This flexible schedule was not an undue hardship on Defendant.

19. No one told Reynolds that he needed to fill out any special paperwork for this accommodation and Reynolds had no problems working within this flexible schedule arrangement.

20. During the first few months of his employment, Reynolds attempted to bring in doctors' notes for his disability-related absences, but his supervisors told him that they were not allowed to take doctors' notes.

21. Reynolds continued to perform his job well.

22. In or around February of 2024, Max Grushin took over the Manager position for Carvana's Old Hickory location.

23. Reynolds explained his disability to Grushin, describing his symptoms, need for doctors' appointments, Wednesday through Sunday work schedule, and use of a flexible schedule to deal with absences or time off for flare-ups.

24. Grushin told Reynolds that he could not control the schedule and couldn't guarantee Reynolds' Wednesday through Sunday work schedule.

25. Grushin also told Reynolds that he was no longer able to come in early or stay late on any days to make up hours missed due to his disability.

26. Grushin did not speak with Reynolds about other possible accommodations, nor did he refer Reynolds to Human Resources to discuss accommodations.

27. Shortly after that, Reynolds applied for intermittent leave under the Family Medical Leave Act to use for flare-ups and doctors' appointments related to his Chron's disease.

28. Defendant approved Reynolds' application for intermittent FMLA.

29. Towards the end of July 2024, Reynolds' disability-related symptoms began increasing and he knew he would need to start seeing the doctor more.

30. As a result, Reynolds spoke with Grushin again about having a consistent Wednesday through Sunday work schedule for his disability.

31. Reynolds was scheduled to be off for a few days the last week in July and Grushin said that when Reynolds came back from his scheduled vacation, Grushin would schedule Reynolds to be off Mondays and Tuesdays moving forward.

32. Reynolds told Simpson that Grushin had agreed to the consistent Wednesday through Sunday schedule that had worked for him in the past and Simpson said ok.

33. Neither Grushin nor Simpson told Reynolds that he needed to fill out any special paperwork for this schedule accommodation.

34. For the first two weeks following Reynolds' return from vacation, he was scheduled to be off Mondays and Tuesdays.

35. In August 2024, Reynolds continued to experience increasing adverse symptoms of his disability with repeated flare-ups that were lasting longer than usual.

36. As he had in the past, if he needed to be absent on a certain day due to his disability, Reynolds would notify a supervisor. Additionally, if Reynolds needed to leave early or come in late due to his disability, he would let a supervisor know.

37. After being approved for FMLA use, Reynolds also notified Defendant's "Leaves" department about any time away from work needed due to his disability.

38. It was Reynolds' understanding from the Leaves department that his absences were covered by FMLA.

39. On Sunday, August 18, 2024, Reynolds experienced a flare-up related to a new medication for his disability and notified Simpson that he would not be able to come to work that day.

40. On Monday, August 19, Simpson sent Reynolds a text, asking if he was still not able to come to work.

41. Reynolds understood that Grushin's previous agreement to provide Reynolds with a consistent Wednesday to Sunday schedule was a permanent accommodation,

so Reynolds had already scheduled a doctor's appointment for August 19th, which was a Monday.

42. Reynolds notified Simpson about his need to be absent for the doctor's appointment and reminded him about the Wednesday through Sunday schedule.

43. Over the next few weeks, Reynolds provided Defendant with additional updates on his disability treatment, including needing to be off work to undergo a surgical procedure on September 20, 2024, and to recover for a few additional days after the procedure.

44. Reynolds also kept in contact with the Leaves department to make sure that his absences were correctly reported to his supervisors by Leaves as FMLA-qualifying.

45. Reynolds continued to work his scheduled shifts when his disability was not flaring up.

46. Reynolds worked on Sunday, September 15, 2024 and then was off on that Monday.

47. On Tuesday, September 17, 2024, a Human Resources employee for Defendant called Reynolds.

48. Defendant said Reynolds was being terminated for absences.

49. Prior to his termination, Reynolds had not received any discipline from Defendant related to his absences.

50. Reynolds contacted Simpson to ask for more information about the termination, but Simpson indicated the matter was out of his hands.

51. Reynolds was disciplined for absences that should have been covered under the Family Medical Leave Act and/or should have been excused as a reasonable accommodation for his disability.

52. Had Defendant correctly designated Plaintiff's leave as FMLA-qualifying and/or excused the time away from work as a reasonable accommodation for his disability, Plaintiff would not have had the number of attendance points on which Defendant has claimed to base Plaintiff's termination.

53. In the weeks prior to his termination, Reynolds notified his supervisors that his mother was experiencing complications and increased symptoms related to her chronic health conditions. Reynolds explained that she was seeing an oncologist, had multiple doctors' appointments scheduled, including a surgical procedure, and could not drive herself to these appointments as a result of her health conditions.

54. Although Reynolds had not yet requested FMLA leave to care for his mother's serious health condition, he provided sufficient information to his supervisors for them to know that he might qualify for such leave and would need to use that FMLA leave in the near future.

55. In terminating Plaintiff, Defendant interfered with Plaintiff's ability to take FMLA leave in the future for his own serious health condition and to care for his

mother's serious health condition.

56. Plaintiff is an individual with a disability but is able to perform the essential functions of the job of Lot Attendant or other positions, with or without accommodation.

57. Providing reasonable accommodations to Plaintiff would not have been an undue hardship on Defendant.

58. Defendant intentionally, willfully, and maliciously discriminated against Plaintiff based on his status as a person with a "disability", by failing to reasonably accommodate him, failing to engage in the interactive process, disciplining him, and terminating his employment, in violation of the Americans with Disabilities Act, as amended.

59. Defendant intentionally, willfully, and maliciously interfered with Plaintiff's rights under the FMLA by failing to appropriately designate certain leave as FMLA-qualifying, and terminating him before he could take FMLA leave for his own serious health condition and/or the serious health condition of his mother.

60. Reynolds further asserts that his termination was in retaliation for requesting and using intermittent FMLA leave for his serious health condition as well as for requesting and utilizing reasonable accommodations for his disability.

61. As a result of Defendant's actions, Plaintiff has suffered extreme harm, including, but not limited to, loss of employment opportunities, denial of wages,

compensation, and other benefits and conditions of employment. Additionally, Plaintiff has suffered injury including pain, humiliation, emotional distress, mental anguish and suffering, and loss of enjoyment of life.

## V. CAUSES OF ACTION

### A. Failure to Accommodate in violation of the Americans with Disabilities Act

62. Plaintiff re-alleges and incorporates by reference paragraphs 1-52, 56-58, and 61 above with the same force and effect as if fully set out in specific detail herein below.

63. Plaintiff is a person with a disability, as that term is defined by the Americans with Disabilities Act. Plaintiff also has a record and history of a disability. See 42 U.S.C. 12102.

64. Defendant is a covered entity and an employer in accordance with 42 U.S.C. 12111(5).

65. Plaintiff is a qualified individual as defined under the ADA. Despite Plaintiff's disability, with or without reasonable accommodation, he is able to perform the essential functions of the job of Lot Attendant and other positions. See 42 U.S.C. 12111.

66. Under the ADA, Defendant is prohibited from utilizing standards, criteria, or methods of administration that have the effect of discrimination on the basis of disability. 42 U.S.C. 12112(b)(3)(A).

67. Defendant violated the ADA by failing to provide Plaintiff with reasonable accommodations. 42 U.S.C. 12112(b)(5)(A).

68. Such accommodations would not have imposed an undue hardship on the operation of the Defendant's business.

69. In failing to provide Plaintiff with reasonable accommodations, Defendant has maliciously, intentionally, and with reckless disregard discriminated against Plaintiff due to his disability and his record of disability. See 42 U.S.C. 12112.

70. Defendant has no legitimate, non-discriminatory reason for its conduct.

71. As a proximate result, Plaintiff has suffered extreme harm including, but not limited to, loss of employment, denial of wages, compensation, and other benefits and conditions of employment. Plaintiff has also suffered injury, including pain, humiliation, mental anguish and suffering.

**B. Failure to Engage in the Interactive Process in violation of the Americans with Disabilities Act**

72. Plaintiff re-alleges and incorporates by reference paragraphs 1-52, 56-58, and 61 above with the same force and effect as if fully set out in specific detail herein below.

73. Plaintiff is a person with a disability, as that term is defined by the Americans with Disabilities Act. Plaintiff also has a record and history of a disability. See 42 U.S.C. 12102.

74. Defendant is a covered entity and an employer in accordance with 42 U.S.C. 12111(5).

75. Plaintiff is a qualified individual as defined under the ADA. Despite Plaintiff's disability, with or without reasonable accommodation, he is able to perform the essential functions of the job of Lot Attendant and other positions. See 42 U.S.C. 12111.

76. Under the ADA, Defendant is prohibited from utilizing standards, criteria, or methods of administration that have the effect of discrimination on the basis of disability. 42 U.S.C. 12112(b)(3)(A).

77. Plaintiff requested reasonable accommodations from Defendant, but Defendant failed to engage in the interactive process and failed to participate in the interactive process in good faith.

78. Defendant violated the ADA by failing to provide Plaintiff with reasonable accommodations. 42 U.S.C. 12112(b)(5)(A).

79. Such accommodations would not have imposed an undue hardship on the operation of the Defendant's business.

80. In failing to engage in the interactive process with the Plaintiff, Defendant has maliciously, intentionally, and with reckless disregard discriminated against Plaintiff due to his disability and his record of disability. See 42 U.S.C. 12112.

81. Defendant has no legitimate, non-discriminatory reason for its conduct.

82. As a proximate result, Plaintiff has suffered extreme harm including, but not limited to, loss of employment, denial of wages, compensation, and other benefits and conditions of employment. Plaintiff has also suffered injury, including pain, humiliation, mental anguish and suffering.

**C. Disparate Treatment in violation of the Americans with Disabilities Act**

83. Plaintiff re-alleges and incorporates by reference paragraphs 1-52, 56-58, and 61 above with the same force and effect as if fully set out in specific detail herein below.

84. Plaintiff is a person with a disability, as that term is defined by the Americans with Disabilities Act. Plaintiff also has a record and history of a disability; and Defendant regarded Plaintiff as disabled. See 42 U.S.C. 12102.

85. Defendant is a covered entity and an employer in accordance with 42 U.S.C. 12111(5).

86. Plaintiff is a qualified individual as defined under the ADA. Despite Plaintiff's disability, with or without reasonable accommodation, he is able to perform the essential functions of the job of security guard and other positions. See 42 U.S.C. 12111.

87. Under the ADA, Defendant is prohibited from discriminating against Plaintiff, a qualified individual, on the basis of disability in regard to, inter alia, discipline,

discharge, and other terms, conditions, and privileges of employment. 42 U.S.C. 12112(a).

88. In terminating the Plaintiff, Defendant has maliciously, intentionally, and with reckless disregard discriminated against Plaintiff due to his disability, his record of disability, and Defendant's perception of Plaintiff as disabled. See 42 U.S.C. 12112.

89. Defendant has no legitimate, non-discriminatory reason for its conduct.

90. As a proximate result, Plaintiff has suffered extreme harm including, but not limited to, loss of employment, denial of wages, compensation, and other benefits and conditions of employment. Plaintiff has also suffered injury, including pain, humiliation, mental anguish and suffering.

**D. Retaliation in violation of the Americans with Disabilities Act**

91. Plaintiff re-alleges and incorporates by reference paragraphs 1-52, 56-58, and 60-61 above with the same force and effect as if fully set out in specific detail herein below.

92. Plaintiff is a person with a disability, as that term is defined by the Americans with Disabilities Act. Plaintiff also has a record and history of a disability; and Defendant regarded Plaintiff as disabled. See 42 U.S.C. 12102.

93. Defendant is a covered entity and an employer in accordance with 42 U.S.C. 12111(5).

94. Plaintiff is a qualified individual as defined under the ADA. Despite Plaintiff's

disability, with or without reasonable accommodation, he is able to perform the essential functions of the job of security guard and other positions. See 42 U.S.C. 12111.

95. Under the ADA, Defendant is prohibited from discriminating against an individual because such individual has opposed an act made unlawful by the ADA and the Defendant is prohibited from interfering with any individual in the exercise or enjoyment, or on account of his having exercised or enjoyed, any right granted or protected by the ADA. 42 U.S.C. 12203(a) and (b).

96. Plaintiff engaged in protected activity when he requested accommodations and when he used accommodations.

97. In terminating the Plaintiff, Defendant has maliciously, intentionally, and with reckless disregard interfered with Plaintiff's exercise of his rights under the ADA and retaliated against Plaintiff due to his protected activity. See 42 U.S.C. 12203.

98. Defendant has no legitimate, non-discriminatory reason for its conduct.

99. As a proximate result, Plaintiff has suffered extreme harm including, but not limited to, loss of employment, denial of wages, compensation, and other benefits and conditions of employment. Plaintiff has also suffered injury, including pain, humiliation, mental anguish and suffering.

**E. The Family Medical Leave Act –Interference**

100. Plaintiff realleges and incorporates by reference paragraphs 1-55, 59, and 61

above with the same force and effect as if fully set out in specific detail herein below.

101. Plaintiff Collin Reynolds had a serious health condition pursuant to 29 U.S.C. 2612 and 29 C.F.R. 825.113.

102. Defendant Carvana is an employer in accordance with 29 U.S.C. 2611 and 29 C.F.R. 825.104. As a result, Carvana is subject to compliance with the FMLA.

103. Plaintiff was an eligible employee under 29 C.F.R. 825.110 entitled to take leave for his serious health condition.

104. Plaintiff's mother also had a serious health condition pursuant to 29 U.S.C. 2612 and 29 C.F.R. 825.113.

105. Plaintiff provided Defendant with information sufficient to give Defendant knowledge that Plaintiff may be eligible to use intermittent FMLA leave to care for his mother's serious health condition. 29 C.F.R. 825.300; 825.301.

106. Plaintiff was entitled to benefits under the FMLA, but was effectively denied FMLA benefits in violation of the 29 C.F.R. 825.220.

107. Defendants unlawfully interfered with Plaintiff's rights to benefits under the FMLA by, inter alia, failing or refusing to allow Plaintiff to use FMLA leave on an intermittent basis and by failing or refusing to designate certain absences or tardies as covered by the FMLA. 29 U.S.C. 2615; 29 C.F.R. 825.100(a); 29 C.F.R. 825.202.

108. Further, Defendants unlawfully interfered with Plaintiff's use of FMLA leave

by disciplining him for absences/tardies that should have been covered by the FMLA and by terminating his employment. 29 C.F.R. 825.220.

109. Defendants' actions were willful and unreasonable.

110. As a result of Defendants' actions and inactions, Plaintiff has suffered extreme harm, including, but not limited to, loss of employment opportunities, denial of wages, compensation, and other benefits and conditions of employment. Additionally, Plaintiff has suffered injury including pain, humiliation, mental anguish and suffering, and loss of enjoyment of life.

**F. The Family Medical Leave Act – Retaliation**

111. Plaintiff realleges and incorporates by reference paragraphs 1-55, 59-61 above with the same force and effect as if fully set out in specific detail herein below.

112. Plaintiff Collin Reynolds had a serious health condition pursuant to 29 U.S.C. 2612 and 29 C.F.R. 825.113.

113. Defendant Carvana is an employer in accordance with 29 U.S.C. 2611 and 29 C.F.R. 825.104. As a result, Carvana is subject to compliance with the FMLA.

114. Plaintiff was an eligible employee under 29 C.F.R. 825.110 and entitled to take leave for his serious health condition.

115. Plaintiff engaged in statutorily protected activity by requesting and taking leave for his serious health condition.

116. Subsequent to this, Defendant unlawfully retaliated against Plaintiff by

refusing to allow him to use FMLA leave on an intermittent basis, disciplining him for absences/tardies that should have been covered by the FMLA, and terminating his employment. 29 C.F.R. 825.220. Defendant's actions were causally connected to Plaintiff's protected activity.

117. Defendant's actions were willful and unreasonable.

118. As a result of Defendant's actions and inactions, Plaintiff has suffered extreme harm, including, but not limited to, loss of employment opportunities, denial of wages, compensation, and other benefits and conditions of employment. Additionally, Plaintiff has suffered injury including pain, humiliation, mental anguish and suffering, and loss of enjoyment of life.

## VI. PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

1. Issue a declaratory judgment that the employment practices, policies, procedures, conditions, and customs that led to the discrimination by Defendant violate Plaintiff's rights as secured by the Americans with Disabilities Act, 42 U.S.C. 12101, et seq. ("ADA") and the Family Medical Leave Act ("FMLA"), 29 U.S.C. 2601 et. seq.

2. Grant Plaintiff a permanent injunction enjoining Defendant, its agents,

successors, employees, attorneys and those acting in concert with the Defendant and at the Defendant's request, from continuing to violate the ADA and the FMLA.

3. Enter an Order requiring the Defendant to make Plaintiff whole by awarding Plaintiff reinstatement, back-pay (plus interest), lost benefits, liquidated damages, compensatory damages, punitive damages, and nominal damages.

4. Plaintiff further prays for such other and further relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorney's fees and expenses incurred by this litigation.

5. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged in this suit, and this action for injunctive, declaratory and other relief is his only means of securing adequate relief.

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY.**

Dated: October 27, 2025

Respectfully submitted,

*/s/Daniel Arciniegas*
Daniel Arciniegas
Arciniegas Law PLLC
256 Seaboard Lane, Suite E-105
Franklin, Tennessee 37067
(629) 777-5339
Email: daniel@attorneydaniel.com

*/s/ Rachel L. McGinley*
Rachel L. McGinley
*(To be admitted Pro Hac Vice)*
Alabama State Bar No.: 1892-A64M
**Wiggins, Childs, Pantazis, Fisher, Goldfarb**
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 314-0500
Email: rmcginley@wigginschilds.com

Attorneys for Plaintiff

**DEFENDANT'S ADDRESS**
Carvana, LLC
c/o Corporation Service Company (Registered Agent)
2908 Poston Ave.
Nashville, TN 37203

*/s/ Daniel Arciniegas*
OF COUNSEL